STATE OF CONNECTICUT *v.* VICTOR WEBB
(AC 21834)

Lavery, C. J., and West and Peters, Js.

Argued December 9, 2002—officially released March 11, 2003

*David V. DeRosa,* special public defender, for the appellant (defendant).

*Christopher T. Godialis,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *David J. Strollo,* senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Victor Webb, appeals from the judgment of conviction, rendered after a jury trial, of one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a), and one count of attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-70 (a) (1). On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction of attempt to commit sexual assault in the first degree, (2) the trial court improperly failed to disclose exculpatory and relevant material for cross-examination of the victim after performing an in camera review of the victim's confidential records, (3) the court improperly denied his motion for his appellate counsel to review the sealed, confidential records of the victim for purposes of preparing his appeal and (4) the court improperly failed to order a psychiatric examination of the victim. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant had been residing with the victim[1] in her apartment in New Haven, and paid her a weekly rent of $40, in the form of either money or drugs. The victim slept alone in her bedroom while the defendant slept on a couch in the living room. There was a door that separated the two rooms. On July 23, 1999, the victim, the defendant and Calvin Bromell collectively smoked between twenty to thirty bags of cocaine at the victim's apartment beginning at approximately 6 p.m. and continuing for several hours. Bromell eventually left the victim's apartment.

---

[1] The identity of the victim remains confidential pursuant to General Statutes § 54-86e, which provides in relevant part: "The name and address of the victim of a sexual assault under section 53a-70 . . . or of an attempt thereof, shall be confidential and shall be disclosed only upon order of the Superior Court . . . ."

Sometime after 2 p.m. on July 24, 1999, the defendant entered the victim's bedroom and asked her to have sex. The victim told the defendant "no" and walked the defendant to the door. She closed the door and laid back down on her bed. Shortly thereafter, the defendant entered the bedroom again in a rage, brandishing a switchblade knife, and yelled, "You ain't gonna do it?" The defendant then grabbed the victim's pants and attempted to take them off. A struggle ensued and both fell to the floor. While on the floor, the defendant began choking the victim. The victim eventually passed out, and the defendant left. The victim was transported to the Hospital of Saint Raphael for her injuries, which included abrasions on the front part of her neck and red marks on her face.

I

The defendant's first claim is that there was insufficient evidence to support his conviction of attempt to commit sexual assault in the first degree in violation of §§ 53a-49 (a) (2)[2] and 53a-70 (a) (1).[3] Specifically, the defendant argues that there was insufficient evidence to prove beyond a reasonable doubt that he had the intent to assault the victim sexually or that his conduct constituted a substantial step toward the commission of sexual assault in the first degree. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two-

[2] General Statutes § 53a-49 (a) provides in relevant part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[3] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Padua*, 73 Conn. App. 386, 392, 808 A.2d 361 (2002), cert. granted on other grounds, 262 Conn. 941, 815 A.2d 672 (2003). "In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Smith*, 73 Conn. App. 173, 179, 807 A.2d 500, cert. denied, 262 Conn. 923, 812 A.2d 865 (2002).

"To convict the defendant of attempt to commit sexual assault in the first degree in violation of §§ 53a-70 and 53a-49 (a) (2), the state must prove beyond a reasonable doubt that the defendant acted with the specific intent to commit sexual assault in the first degree, which, in turn, included the intent to have sexual intercourse and that the defendant took a substantial step in a course of conduct planned to culminate in his commission of the crime. Intent may be inferred from the conduct of the accused and is a determination for the trier of fact. . . . Likewise, [w]hat constitutes a substantial step in any given case is a matter of degree

and a question of fact for the [trier]." (Citations omitted; internal quotation marks omitted.) *State* v. *Lavigne*, 57 Conn. App. 463, 469, 749 A.2d 83 (2000).

The jury's determination that the defendant possessed the intent to commit sexual assault in the first degree is supported by substantial evidence. We note that "the actor's intent can be inferred from his or her verbal or physical conduct and the surrounding circumstances." (Internal quotation marks omitted.) *State* v. *Wilcox*, 254 Conn. 441, 468, 758 A.2d 824 (2000). Here, the defendant had entered the victim's bedroom and asked for sex, which the victim refused. Moments later, the defendant entered the bedroom again in a rage, while brandishing a knife, and demanded, "You ain't gonna do it?" A struggle ensued during which the defendant grabbed the victim's pants and tried to remove them. On the basis of that evidence, the jury reasonably could have concluded that the defendant intended to force the victim to have sexual intercourse with him due to his initial request for sex, his angry demand again for sex after she refused and his attempt to pull down her pants. The jury also reasonably could have concluded that the defendant intended to compel sexual intercourse by the use of force or the threat of the use of force based on the struggle between the victim and the defendant and his having been armed with a switchblade knife when he made his second demand for sex.

There also was sufficient evidence for the jury to reasonably conclude that the defendant's conduct constituted a substantial step in the commission of sexual assault in the first degree. "The act or acts must be something more than mere preparation for committing the intended crime; they must be at least the start of a line of conduct which will lead naturally to the commission of a crime which appears to the actor at least to be possible of commission by the means adopted."

(Internal quotation marks omitted.) Id. The defendant entered the victim's bedroom in a rage with a knife and then proceeded to engage in a struggle with the victim in an attempt to remove her pants. The jury reasonably could have concluded that the defendant's grabbing the victim's pants in an attempt to remove them while wielding a knife and demanding sex was a substantial step in forcing her to have sexual intercourse with him.

## II

The defendant's second claim is that the court improperly failed to disclose relevant material for cross-examination after performing an in camera review of the victim's confidential records. The defendant argues that the failure to disclose those materials violated his rights under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. We are not persuaded.

The following additional facts are necessary for the resolution of the defendant's claim. The defendant subpoenaed numerous confidential records of the victim from various organizations prior to trial.[4] Each organization's file was made into a court exhibit as follows: (1) department of children and families, (2) Connections, (3) Hospital of Saint Raphael records concerning the events of July 24, 1999, (4) American Medical Response, (5) Yale-New Haven Hospital, (6) office of adult probation, (7) the APT Foundation, (8) the Connecticut Men-

---

[1] Citizens of Connecticut are afforded confidentiality in certain records and communications. See General Statutes §§ 52-146c (communications between psychologist, patient); 52-146d et seq. (communications between psychiatrist, patient); 52-146o (communications or information by physician, surgeon, health care provider); 17a-28 (department of children and families records); 17a-688 (records concerning drug abuse, treatment).

It should be noted that although some of the records that were sealed by the court and subject to in camera review were not privileged communications of the victim, the defendant does not claim on appeal that failure to disclose those records was improper.

tal Health Center, (9) Connecticut Valley Hospital, (10) Hospital of Saint Raphael records concerning the victim, (11) New Haven police department records concerning a fire at 1476 Chapel Street from October through December, 1999, (12) United States Department of Veterans Affairs, (13) New Haven police department records concerning the victim, (14) American Medical Response records concerning the victim on January 20, 1997, (15) New Haven fire department records for the attack at 1476 Chapel Street on July 24, 1999, (16) Gaylord Hospital, (17) New Haven police department dispatch tapes, recordings and calls concerning the attack on the victim on July 24, 1999, and (18) New Haven police department records concerning the victim on January 20, 1997.

Pursuant to the procedure set forth in *State* v. *D'Ambrosio*, 212 Conn. 50, 561 A.2d 422 (1989), cert. denied, 493 U.S. 1063, 110 S. Ct. 880, 107 L. Ed. 2d 963 (1990), the court conducted an in camera inspection of all the subpoenaed records. The defendant informed the court that he was seeking "anything dealing with prostitution, drugs, alcohol, lying and any psychiatric matters." After the court's in camera review of all the subpoenaed records, several documents were deemed to be material to the credibility of the victim as a witness. The victim consented to the disclosure of those records to the defendant and they were given to him on December 1 and 5, 2000.[5] Records from the Connecticut Mental

---

[5] Those materials included: (1) Hospital of Saint Raphael admission report of the victim on July 24, 1999, (2) American Medical Response reports the for victim on July 24, 1999, and January 20, 1997, (3) the victim's violation of probation file, (4) portions of the APT Foundation evaluation of the victim dated September 20, 2000, (5) portions of the Connecticut Mental Health Center clinical assessment of the victim dated December 30, 1992, (6) a portion of the Connecticut Valley Hospital admission psychiatric evaluation dated March 2, 2000, (7) Hospital of Saint Raphael report of the victim on January 20, 1997, (8) New Haven police department records of (a) 1998 complaint concerning the misuse of an automated teller machine card by the victim, (b) December 15, 1998 report concerning a possible arrest for reporting an incident falsely, (c) report of alleged shoplifting by the victim

Health Center, the Dutcher Treatment Center and the APT Foundation revealed that the victim has been a consistent drug user for more than a decade, has demonstrated paranoid and psychotic symptoms, has been diagnosed pursuant to the Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 1994) (DSM-IV) as being "cocaine dependent" and having a "recurrent major depressive disorder with psychotic features," and has a history of visual and auditory hallucinations stemming from her cocaine use.

On direct examination, the victim admitted to being a drug addict for eleven years. She also stated that she engages in prostitution to obtain drugs or money to purchase drugs. The victim also described her hallucinations. According to the victim, she would have visual and auditory hallucinations after smoking ten to fifteen bags of cocaine. She indicated, however, that she can differentiate between reality and a hallucination. The defendant extensively cross-examined the victim concerning her engaging in prostitution for drugs, and also made use of the disclosed records relating to her hallucinations and treatment for drug use in 1992, 1994 and 2000. Several of the disclosed documents were entered into evidence as full exhibits.[6] Finally, in closing argu-

and (d) report concerning an attack on the victim on January 20, 1997, (9) New Haven fire department records of the January 20, 1997 incident involving the victim and (10) portions of the Connecticut Valley Hospital Dutcher Treatment Center admission note dated September 20, 1994.

[6] Those documents included: (1) portions of the Connecticut Mental Health Center clinical assessment form dated December 30, 1992, (2) portions of the Connecticut Valley Hospital Dutcher Treatment Center admission note dated September 20, 1994, (3) a portion of the Connecticut Valley Hospital admission psychiatric evaluation dated March 2, 2000, (4) a portion of the APT Foundation evaluation of the victim dated September 20, 2000, (5) Hospital of Saint Raphael records of the victim's treatment on July 24, 1999, and January 20, 1997, (6) New Haven police department report of January 20, 1997, the victim's signed statement concerning January 20, 1997 statement, arrest warrant and supporting affidavit for January 20, 1997, (7) New Haven police department report of the December 15, 1998 incident and (8) New Haven police department report of April 2, 1998, involving the victim's alleged misuse of an automated teller machine card.

ment, the defendant drew the jury's attention to the victim's hallucinations and how those hallucinations affected her credibility as a witness.

"A criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception. . . . Thus, in some instances, otherwise privileged records . . . must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility." (Citations omitted.) *State* v. *Slimskey*, 257 Conn. 842, 853–54, 779 A.2d 723 (2001). "The defendant's right of cross-examination does not, however, allow him to discredit and impeach in whatever way, and to whatever extent, the defendant might wish." (Internal quotation marks omitted.) *State* v. *Rosado*, 52 Conn. App. 408, 415, 726 A.2d 1177 (1999). "[T]he right to cross-examine witnesses does not include the power to *require* the pretrial disclosure of any and all information that *might* be useful in contradicting unfavorable testimony." (Emphasis in original; internal quotation marks omitted.) *State* v. *Slimskey*, supra, 854.

Our Supreme Court has set forth a specific procedure to accommodate the tension between the defendant's constitutional right of cross-examination and the privacy interest of a witness in her confidential records. "If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that there is a reasonable ground to believe that the failure to produce the records would likely impair his right to impeach the witness. . . . If

in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken. . . .

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review." (Citations omitted; internal quotation marks omitted.) *State* v. *D'Ambrosio*, supra, 212 Conn. 58.

Our standard of review of a challenge to a court's refusal to disclose privileged records is whether there was an abuse of discretion. *State* v. *Olah*, 60 Conn. App. 350, 354, 759 A.2d 548 (2000). "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) Id. "Access to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value

against the interest in confidentiality of the records." (Internal quotation marks omitted.) *State* v. *Slimskey*, supra, 257 Conn. 856. "On appeal, this court has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defendant." *State* v. *Walsh*, 52 Conn. App. 708, 722, 728 A.2d 15, cert denied, 249 Conn. 911, 733 A.2d 233 (1999).

Our in camera review of the confidential records demonstrates that the court did abuse its discretion. We will not reveal specific details of the result of our in camera review because the victim may withhold her consent to the disclosure of that additional material. See *State* v. *Olah*, supra, 60 Conn. App. 355. We need only to identify sufficiently the documents in case of further review by our Supreme Court. Id. Succinctly stated, our review reveals several documents that are "especially probative of the [victim's] ability to comprehend, know and correctly relate the truth . . . ." (Internal quotation marks omitted.) *State* v. *Delgado*, 261 Conn. 708, 718–19, 805 A.2d 705 (2002). The documents pertain to the victim's extensive drug use and psychiatric conditions, including the presence of auditory and visual hallucinations.[7]

---

[7] Those documents consist of: (1) United States Department of Veterans Affairs psychiatric evaluation dated March 23, 2000, (2) Connecticut Mental Health Center discharge summary dated December 29, 1999, (3) Connecticut Mental Health Center service transfer note dated December 30, 1997, (4) Connecticut Mental Health Center progress notes of January 18, 1998, December 30, 1997, December 22, 1997, September 17, 1997, September 10, 1997, September 3, 1997, and September 24, 1992, (5) Connecticut Mental Health Center master treatment plans of June 2, 1999, December 2, 1998, and August 22, 1992, (6) Connecticut Mental Health Center access referral sheet dated August 18, 1997, (7) Connecticut Mental Health Center clinical intake form dated August 27, 1992, (8) Connecticut Mental Health Center clinical assessment form dated December 30, 1992, and (9) Connecticut Valley Hospital Dutcher Treatment Center admission note dated September 24, 1994.

Although some portions of the Connecticut Mental Health Center clinical assessment form and the Connecticut Valley Hospital Dutcher Treatment

"The capacity of a witness to observe, recollect and narrate an occurrence is a proper subject of inquiry on cross-examination. If as a result of a mental condition such capacity has been substantially diminished, evidence of that condition before, at and after the occurrence and at the time of the trial, is ordinarily admissible for use by the trier in passing of the credibility of the witness." *State* v. *Esposito*, 192 Conn. 166, 176, 471 A.2d 949 (1984). Here, the victim's testimony at trial and the disclosed records from the court's *D'Ambrosio* review demonstrate that the victim suffers from hallucinations when she smokes cocaine. Material that documents that condition of the victim, therefore, would be relevant to cross-examination of her concerning her ability to observe and to recall the attack on July 24, 1999. The fact that the court found extremely similar documents especially probative of the victim's credibility and disclosed those documents to the defendant after receiving the victim's consent further supports our conclusion that it was an abuse of discretion not to disclose those additional documents we have found from our in camera review of the sealed records.

We must next determine whether the court's decision in failing to disclose all probative documents affecting the victim's credibility was harmless beyond a reasonable doubt. *State* v. *Slimskey*, supra, 257 Conn. 859. "The correct inquiry for identifying harmless constitutional error is to ask whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. . . . Whether such error is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the

Center admission note were disclosed to the defendant, other relevant portions were not disclosed.

presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (Internal quotation marks omitted.) Id.

Upon review of the entire record, we conclude that the court's impropriety was harmless beyond a reasonable doubt. In this case, the court disclosed to the defendant several documents from the victim's confidential files concerning her drug use, DSM-IV diagnoses and her extensive history of hallucinations dating from 1992 until 2000. The undisclosed documents would be merely cumulative of the documents in the defendant's possession. In addition, the defendant performed an extensive cross-examination of the victim concerning her hallucinations and drug use. The undisclosed documents would not have added substantively to the cross-examination of the victim relating to her ability to recall, recollect or narrate the events of July 24, 1999, due to her drug use and possible hallucinations.[8] Furthermore, the court did not limit in any way the defendant's inquiry into the victim's hallucinations and drug use on cross-examination. There also was corroborating evidence to support the victim's testimony on material points, including the victim identifying the defendant in a photographic array on July 27, 1999, her in-court identification of the defendant as her assailant, and photographs of injuries to her neck and face that were consistent with being strangled. There also was testimony and exhibits noting that the victim was alert and oriented, as opposed to high on cocaine, when she was treated for her injuries immediately after the attack. Upon review of the entire record, we conclude that the court's abuse of discretion in failing to disclose additional,

---

[8] We note that the victim did not testify at trial that she hallucinated on the day of the attack.

cumulative material was harmless beyond a reasonable doubt.

## III

The defendant's third claim is that the trial court improperly denied his request for his appellate counsel to review the sealed, confidential records of the victim for purposes of preparing his appeal. The defendant argues that both his federal and state constitutional rights to compulsory process, confrontation and due process require that records sealed pursuant to the *D'Ambrosio* procedure be unsealed for appellate counsel to review in preparation of the defendant's appeal. We decline to review the claim.[9]

On October 9, 2001, the defendant's appellate counsel filed a motion with the court seeking an order unsealing all court exhibits reviewed in camera and sealed by the court. The court denied the motion on October 17, 2001. The defendant then filed a timely motion for review of the court's decision on October 29, 2001, pursuant to Practice Book § 66-6. In his motion to this court, the defendant puts forward the same argument included in his appellate brief on the issue. We granted review, but denied the relief requested on January 23, 2002.

The defendant's claim, in which he essentially is requesting that we again review his motion to unseal the confidential records for appellate counsel's review, is dismissed as having been presented to us improperly.

---

[9] Although we do not review the claim, we note our previous statements that the "proper procedure is to seal any records that are privileged and not discoverable after ruling on the defendant's motion for disclosure. Those records should remain sealed *through the completion of the appellate process* for the purpose of review by an appellate court." (Emphasis added.) *In re Christopher G.*, 20 Conn. App. 101, 110 n.6, 564 A.2d 619 (1989), cert. denied, 213 Conn. 814, 569 A.2d 549 (1990). Sealing the privileged records throughout the appeal preserves the confidentiality interests embodied in the statutes imposing a privilege in certain records. See *State* v. *Beliveau*, 237 Conn. 576, 596 n.11, 678 A.2d 924 (1996).

See *Weber's Nursery, Inc.* v. *Prior*, 71 Conn. App. 433, 438, 802 A.2d 206 (2002). Permitting the defendant to raise the issue again on appeal would be to provide two appellate reviews of the same issue and, therefore, we will not review the claim. See *Andrews* v. *Commissioner of Correction*, 45 Conn. App. 242, 246, 695 A.2d 20, cert. denied, 242 Conn. 910, 697 A.2d 364 (1997).

## IV

The defendant's final claim is that the court improperly failed to order a psychiatric examination of the victim.[10] Specifically, the defendant argues that a psychiatric examination would aid the court in determining whether the victim was competent to testify. In addition, the defendant argues that the failure to order a psychiatric examination impaired his constitutional right to confront and to cross-examine the victim. We disagree.

"The competency of a witness is a matter peculiarly within the discretion of the trial court and its ruling will be disturbed only in a clear case of abuse or some error in law. . . . [I]n determining the competency of a proposed witness the trial court should consider the capacity of the witness to receive correct sense impressions, to comprehend the facts to be developed, to recollect and narrate facts intelligently, and to appreciate the moral duty to tell the truth." (Citations omitted; internal quotation marks omitted.) *State* v. *Morant*, 242 Conn. 666, 677, 701 A.2d 1 (1997). "[W]here the competency of a witness is challenged, the threshold question

---

[10] On December 1, 2000, the defendant filed a pleading titled "Motion for Psychiatric Exam of State's Key Witness Regarding Her Drug Addiction and Mental Disorders as They Relate to Her Competency and Credibility as a Witness." The records released pursuant to the *D'Ambrosio* review as of that date were attached to that motion. The court denied the motion on the same day. After the victim testified as to her drug use and mental problems, the defendant orally renewed his motion for a psychiatric examination on December 6, 2000, which the court denied the same day.

to be answered by the court is whether the testimony of that witness is minimally credible. If the testimony of a witness passes the test of minimum credibility, and is otherwise relevant, the testimony is admissible and the weight to be accorded it, in light of the witness' incapacity, is a question for the trier of fact." *State* v. *Weinberg*, 215 Conn. 231, 243–44, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

"Our case law demonstrates that the drastic measure of ordering a psychiatric examination . . . should be taken only upon compelling reasons. . . . Such an examination should not be ordered if the trial court, after hearing the testimony of the witness, has no doubt of [the witness'] mental soundness. . . . In making such a determination, the trial court may make use of its own observations of the witness." (Citations omitted; internal quotation marks omitted.) *State* v. *Morant*, supra, 242 Conn. 679.

Here, the court performed an extensive in camera review of the victim's confidential records, including a review of documents pertaining to the victim's drug addiction and mental problems, specifically with regard to her hallucinations. The court also had an opportunity to observe the victim's demeanor and ability to testify, as well as to hear the substance of her testimony, all against the backdrop of the court's review of her mental health records. There is nothing in the record to indicate that the court abused its discretion in declining to order a psychiatric examination. The victim was able to understand the questions asked of her, to respond in a coherent manner and was able to clearly recollect the events of July 24, 1999. The court stated, after ruling on the pretrial motion for a psychiatric examination, that "[n]othing in the records that I have reviewed . . . nothing in those records suggests that the [victim] does not possess the sufficient mental capacity and sufficient

testimonial capacity to make her competent in this case." Upon the defendant's renewal of his motion for a psychiatric examination of the victim, the court stated that after observing the victim testify, there was "even less basis now" for a psychiatric examination to be ordered. On the basis of our own review of the confidential records of the victim and the testimony and evidence produced at trial, we conclude that the court did not abuse its discretion in denying the defendant's motion for a psychiatric examination of the victim to determine whether she was competent to testify.

The defendant further argues that the court improperly refused to order the victim to undergo a psychiatric examination to provide material for his cross-examination of her. "The defendant does have a right under the confrontation clause to expose to the jury the facts from which jurors, as the sole triers of [fact] and credibility, [can] appropriately draw inferences relating to the [relia]bility of the [state's witness]. . . . The confrontation clause requires that [if] the testimony of such a witness is to remain in the case as a basis for conviction, the defendant must be afforded a reasonable opportunity to discover any infirmities that may cast serious doubt upon its truthfulness. . . .

"While the competency of a witness is for the trial court to evaluate, the credibility of a witness is for the jury to determine. . . . The trial court may, in its discretion, limit the cross-examination of a witness so long as the defendant's right to confrontation is not impaired. . . . This discretion includes matter[s] of discovery [concerning mental capacity] where material is sought for impeachment purposes. . . . We have held that the trial court has broad discretion in deciding whether to order the psychiatric examination of a witness for the purposes of impeachment. . . .

"Again, it has been emphasized that the discretion to condition a witness' testimony on the witness' submis-

sion to a psychiatric examination should be exercised sparingly. . . . The [trial] court [is] entitled to be leery of both psychiatric examinations of witnesses and psychiatric testimony about witnesses, because the jury can observe for itself . . . the witness's behavior. Criminal trials are complex enough without turning them into collateral investigations of the witnesses—investigations that would not only drag out trials and confuse jurors but also discourage people from serving as witnesses." (Citations omitted; internal quotation marks omitted.) Id., 682–83.

Here, the court disclosed to the defendant several documents concerning the victim's drug addiction and mental health issues, including her hallucinations. The defendant extensively cross-examined the victim on her drug habit and her hallucinations while utilizing those documents, and the court did not limit this area of inquiry in any way. When ruling on the pretrial motion for a psychiatric examination, the court stated that the defendant has "already indicated to the court that [he] is in the process of arranging to have a medical expert look at [the disclosed documents]." The defendant, however, failed to procure his own expert to analyze the records of the victim that were disclosed to present his own opinion. "[A] defendant's right [of cross-examination] is not infringed if the defendant fails to pursue a line of inquiry open to him. . . . The test is whether the opportunity to cross-examine existed, not whether full use of such opportunity was made." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 533, 673 A.2d 1117 (1996). Because a compelled psychiatric examination of a witness can be a tool of harassment and the discretion to order such an examination should be exercised sparingly, the court did not abuse its discretion in denying the defendant's request. See *State* v. *Morant*, supra, 242 Conn. 685. The defendant has failed to demonstrate a constitutional violation that deprived

him of a fair trial, given that several of the victim's confidential records were disclosed and he had an opportunity to cross-examine the victim extensively on both the effects cocaine had on her ability to recollect and her past history of hallucinations.

The judgment is affirmed.

In this opinion the other judges concurred.