## STATE OF CONNECTICUT *v.* MICHAEL A. GRIFFIN (AC 22369)

Lavery, C. J., and West and DiPentima, Js.

Argued May 28—officially released August 12, 2003

*Richard R. Brown*, with whom, on the brief, was *Robert T. Rimmer*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's

attorney, and *Mary Elizabeth Baran*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Michael A. Griffin, appeals from the judgment of conviction, rendered after a trial to the court, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), and attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (2). On appeal, the defendant claims that (1) the evidence was insufficient to support his conviction and (2) the court improperly credited the state's expert witnesses over his expert witnesses. We affirm the judgment of the trial court.

The court found the following relevant facts. On January 14, 1996, the defendant, with no specific victim in mind, planned and prepared to assault a person with an axe. He prepared for his intended assault by sawing off the bottom part of an axe handle to conceal the axe head in his backpack. The defendant drove to a shopping center on Route 80 in North Madison and parked his car. Taking the backpack containing the concealed axe, he began to walk along Route 80 in search of a house where he would execute his attack. At around 7:05 p.m., a Madison police officer briefly observed the defendant walking away from the shopping center. The defendant walked for at least one-half hour until he reached the residence of the victim, James Disston, where the defendant's "gut feeling" told him to carry out his attack.

The defendant removed the axe from his backpack and deposited the backpack on the driveway next door to the victim's residence. Sometime between 8 p.m. and 8:15 p.m., the defendant approached the victim's front door and rang the doorbell. Seeking to gain entry, the defendant, speaking through the victim's closed front

door, related a false story that his car had broken down and that its heater was not working. As the victim "turned the front door dead bolt, the defendant slammed the door back and burst inside." The defendant immediately attacked the victim with the axe, concentrating blows on the victim's torso and head. The victim's wife called the police during the attack. After struggling with the defendant for a while, the victim successfully ejected him from the house. The defendant slipped, fell, and then got up and fled from the victim's premises.

The police apprehended the defendant the following day, January 15, 1996, and he was admitted to the psychiatric ward at the Hospital of Saint Raphael in New Haven. The state charged the defendant with one count of burglary in the first degree and one count of attempt to commit assault in the first degree. The defendant was convicted of both counts and this appeal followed. Additional facts will be provided as necessary.

I

The defendant claims that the evidence adduced at trial was insufficient to support his conviction of (1) burglary in the first degree and (2) attempt to commit assault in the first degree. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the [finding of guilt]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ward*, 76 Conn. App. 779, 796, 821 A.2d 822, cert. denied, 264 Conn. 918, 826 A.2d 1160 (2003). "In this process of review, it does not diminish

the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Webb*, 75 Conn. App. 447, 451, 817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003).

## A

The defendant first claims that the evidence adduced at trial was insufficient to support his conviction of burglary in the first degree. Specifically, the defendant argues that the testimony of the victim and his wife conflicted over whether the defendant had entered the victim's residence and, as a consequence, there was insufficient evidence for the court to conclude beyond a reasonable doubt that the defendant had entered the residence.

Section 53a-101 (a) provides in relevant part: "A person is guilty of burglary in the first degree when he enters or remains unlawfully in a building with intent to commit a crime therein and: (1) He is armed with explosives or a deadly weapon or dangerous instrument . . . ." This court has held that an entry occurs with "[a]ny penetration, however slight, of the space within the . . . [building] by the defendant, or by any part of his body . . . . Accordingly, it is a sufficient entry when the defendant reaches his finger, hand, or arm inside the . . . [building]." (Internal quotation marks omitted.) *State* v. *Smith*, 156 Conn. 378, 382, 242 A.2d 763 (1968), quoting 2 Wharton, Criminal Law and Procedure (1957) § 421, p. 43. Likewise, this court has recognized that an entry occurs once a defendant breaches the plane of an entryway into a subject building. *State* v. *Liebowitz*, 65 Conn. App. 788, 799, 783 A.2d 1108, cert. denied, 259 Conn. 901, 789 A.2d 992 (2001). Direct

evidence of an entry is not required when the evidence is such that the trier of fact reasonably could infer that something the defendant did inside the building could not have been done without first entering the building. *State* v. *Little*, 194 Conn. 665, 674 n.11, 485 A.2d 913 (1984).

Although the defendant claims that there was insufficient evidence to support the court's conclusion, in point of fact, the defendant wants us to revisit the testimony presented at trial and to weigh it differently. That we simply cannot do. "If there is conflicting evidence . . . the fact finder is free to determine which version of the event in question it finds most credible." (Internal quotation marks omitted.) *Fink* v. *Golenbock*, 238 Conn. 183, 210, 680 A.2d 1243 (1996). "The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence. . . . Otherwise, [t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. . . . Thus . . . the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit." (Citations omitted; internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 695–96, 817 A.2d 1176 (2003).

The evidence adduced at trial was sufficient to establish that the defendant had entered the victim's residence. The victim testified that when he "went to open up the door, [the defendant] busted into the house, pushed the door . . . and came after me" and that the defendant "*was now in my house*." (Emphasis added.) The court was well within its discretion to credit the victim's version of events over any other version presented at trial.

Furthermore, there was substantial circumstantial evidence presented from which the court reasonably

could conclude that the defendant had entered the victim's residence. See *State* v. *Webb*, supra, 75 Conn. App. 451 (" '[i]t is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence' "). The victim testified that the defendant had "busted" the door open into the house, leaving a mark on the inside of the victim's wall. The victim testified further that the defendant came after him, swinging an axe, attacked him with the axe and struggled with him. The defendant inflicted wounds on the victim's head, neck, back and torso.

The victim's wife also testified that she saw her husband fighting a man in the front doorway and that she saw someone else's arms, other than her husband's, *"coming in and reaching and moving all about."*[1] (Emphasis added.) From that evidence, it is reasonable to infer that some part of the defendant's body had crossed the entryway of the victim's residence. See *State* v. *Smith*, supra, 156 Conn. 381 (trier of fact entitled to infer entry from facts that door opened inward, lock had been broken off, plate on inside of door that was part of locking device torn loose, wires of burglar alarm on inside of door, door frame, broken or disconnected, door open); *State* v. *Adorno*, 45 Conn. App. 187, 195, 695 A.2d 6 ("[c]ommon sense dictates that it would be reasonable to conclude that, in using the force necessary to kick open a locked door, the momentum would carry the defendant . . . into the victim's apartment"), cert. denied, 242 Conn. 904, 697 A.2d 688 (1997).

The testimony of the victim and his wife, along with circumstantial evidence, was sufficient for the court reasonably to conclude that the defendant had entered

---

[1] Although the defendant contends that there is a conflict in the testimony of the victim and the victim's wife as to whether the defendant had entered the victim's residence, in our view, her testimonial evidence further supports the court's finding that the defendant had entered the residence.

the victim's residence in satisfaction of the entry element of burglary in the first degree. Moreover, the court was well within its discretion in crediting the evidence as it did. On the basis of our review of the evidence presented at trial, construed in the light most favorable to sustaining the finding of guilt, we conclude that the court reasonably could have concluded that the cumulative force of the evidence, direct and circumstantial, was sufficient to establish that the defendant had entered the victim's residence pursuant to § 53a-101 (a).

B

The defendant next claims that the evidence adduced at trial was insufficient to support his conviction of attempt to commit assault in the first degree. Specifically, the defendant claims that there was insufficient evidence to prove beyond a reasonable doubt that he intended to disfigure the victim seriously and permanently. We are not persuaded.

To be guilty of the crime of attempt to commit assault in the first degree, the defendant must have had the specific intent to commit the crime.[2] General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (2). Thus, the defendant must be shown to have had the mental state required to commit assault in the first degree. "To be guilty of assault in the first degree . . . the defendant must *intend* to disfigure another person seriously and permanently. . . . To act intentionally, the defendant must have had the conscious objective to harm the victim." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Anderson*, 74 Conn. App.

---

[2] "There are two essential elements of an attempt under [General Statutes § 53a-49 (a) (2)]. They are, first, that the defendant had a specific intent to commit the crime as charged, and, second, that he did some overt act adapted and intended to effectuate that intent." (Internal quotation marks omitted.) *State* v. *Torres*, 47 Conn. App. 205, 220, 703 A.2d 1164 (1997). In the present case, the defendant challenges only the intent element.

633, 638, 813 A.2d 1039, cert. denied, 263 Conn. 901, 819 A.2d 837 (2003).

"Intent is a question of fact, the determination of which should stand unless the conclusion drawn by the trier is an unreasonable one." (Internal quotation marks omitted.) *State* v. *DeJesus*, 236 Conn. 189, 197, 672 A.2d 488 (1996). "Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances. . . . The use of inferences based on circumstantial evidence is necessary because direct evidence of the accused's state of mind is rarely available. . . . Intent may be gleaned from circumstantial evidence such as the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading up to and immediately following the incident. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation marks omitted.) *State* v. *Porter*, 76 Conn. App. 477, 487–88, 819 A.2d 909, cert. denied, 264 Conn. 910, 826 A.2d 181 (2003).

The defendant argues that the evidence presented shows that the victim was unarmed, that the defendant inflicted multiple blows with an axe, and that if he actually had the intent to do serious and permanent bodily harm to the victim, the attack would have resulted in considerably more harm to the victim than "minor injuries." Although it is true that intent may be gleaned from circumstantial evidence, including the type of wound inflicted, that is not the only basis from which the trier of fact may infer intent.

Here, there was sufficient evidence presented concerning the defendant's conduct from which the court reasonably could infer his intent to harm the victim seriously. The evidence presented indicated that the

defendant had "busted into [the victim's] house," swinging what the victim took to be a "wooden ice scraper," which in fact was an axe, and that the defendant hit the victim with it. The victim further testified that he was hit on the back of his head and on his arms and torso, including a slash on his stomach that left a permanent scar.[3] The weight of the evidence of the defendant's conduct in the perception of the court reasonably could have eclipsed other possible inferences that might be drawn from the relatively minor injuries suffered by the victim.

Moreover, an "attempt is complete and punishable, when an act is done with intent to commit the crime . . . whether the purpose fails by reason of interruption . . . or for other extrinsic cause." (Internal quotation marks omitted.) *State* v. *Torres*, 47 Conn. App. 205, 220, 703 A.2d 1164 (1997). Thus, the fact that the wounds actually inflicted by the defendant were relatively minor does not mean that there was insufficient evidence to find that he intended to inflict serious injury. There are numerous reasons why a defendant's intended result may have been frustrated. The evidence indicated that the defendant's attack on the victim was interrupted because the victim was able to repel the defendant and to expel him from the house. Hence, the court reasonably could have inferred the victim's resistance, and not any lack of intent on the part of the defendant, to be the reason the defendant was prevented from inflicting further harm on the victim.

On the basis of our review of the evidence presented at trial, construed in the light most favorable to sustaining the finding of guilt, we conclude that the court reasonably could have concluded that the cumulative force of the evidence established that the defendant

---

[3] A permanent scar constitutes serious and permanent disfigurement. See *State* v. *Anderson*, supra, 74 Conn. App. 643–44.

had the conscious objective to cause the victim serious and permanent disfigurement. We therefore conclude that the evidence was sufficient to support the defendant's conviction of attempt to commit assault in the first degree pursuant to §§ 53a-49 (a) (2) and 53a-59 (a) (2).

## II

Finally, the defendant claims that the court improperly credited the state's expert witnesses, Eugene Shapiro, a pediatrician, and Joseph V. Penn, a child psychiatrist, over those of the defendant on the issue of insanity. Specifically, the defendant argues that his experts were more credible because Shapiro never met with the defendant, and Penn's opinion really was that of his supervisor and not his own. We are not persuaded.

"It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *United Technologies Corp.* v. *East Windsor*, 262 Conn. 11, 26, 807 A.2d 955 (2002). "[I]n its consideration of the testimony of an expert witness, the [trier of fact] might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . . [T]he [trier of fact] can disbelieve any or all of the evidence on insanity and can construe that evidence in a manner different from the parties' assertions. . . . It is the trier of fact's function to consider, sift and weigh

all the evidence including a determination as to whether any opinions given concerning the defendant's sanity were undercut or attenuated under all the circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Quinet*, 253 Conn. 392, 407–408, 752 A.2d 490 (2000).

The defendant first argues that Shapiro, who is board certified in pediatric infectious diseases with expertise in Lyme disease, was incapable of rendering a more credible and persuasive medical opinion than the defendant's expert physicians because he never had treated or even personally examined the defendant. Our Supreme Court has stated: "A doctor may give an opinion on a medical issue without having examined or treated the patient." (Internal quotation marks omitted.) *Shelnitz* v. *Greenberg*, 200 Conn. 58, 67, 509 A.2d 1023 (1986). Here, Shapiro rendered his opinion, on the basis of his experience and education, concerning the presence or absence of symptoms consistent with Lyme disease in the defendant's medical records. The court was well within its discretion as the trier of fact in finding Shapiro more credible and persuasive than the defendant's witnesses.

The defendant next argues that the court improperly credited the opinion testimony of Penn, who is board certified in child and adolescent psychiatry, over the testimony of the defendant's expert witnesses because Penn's opinion was not his own, but rather that of his supervisor at the Yale fellowship program, Howard Zonana, a psychiatrist. The defendant argues that this unduly deprived him of the opportunity to confront and to cross-examine the witness testifying against him.

Penn's testimony indicated that he merely had consulted with his supervisor to help him state his opinion in a "more succinct manner" and that everything in his report was *his opinion*. The transcript shows that the

defendant extensively cross-examined Penn and that a significant portion of that cross-examination challenged whether Penn's medical opinion was his own or that of someone else. The court had the opportunity to hear and to evaluate the defendant's arguments concerning the basis of Penn's medical opinion. Clearly, the court was not persuaded by the defendant's challenge to Penn's testimony and acted properly within its province as trier of fact in crediting Penn over the defendant's expert witnesses.

We also note that in its memorandum of decision, the court specifically discusses certain "critical factors" that it found to be addressed credibly and persuasively in the expert testimony of Penn and Shapiro.[4] Most importantly, the court found the testimony of Shapiro and Penn "had a more comprehensive foundation in both fact and preparation, was more objective and less speculative, had a stronger clinical and empirical basis, was better reasoned and therefore more persuasive in the perception of the court as finder of fact."

We conclude that the court acted properly in its function as trier of fact in determining that the expert testimony of Shapiro and Penn was more credible than that of the defendant's experts.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] Those factors include "[t]he defendant's premeditated and purposeful conduct in preparing for his attack, carrying it out and in his efforts to avoid detection or apprehension once it was concluded," "[t]he defendant's ability to organize his thinking and function normally before and after the attack," "[t]he absence of any evidence that the defendant had any break with reality," "[t]he defendant's selective amnesia in interaction with his experts in contradiction to the recall he showed in his statements to the police and at the Hospital of Saint Raphael." Additionally, the court thought that the testimony of the defendant's expert witnesses was undercut by their reliance, at least in part, on the self-serving statements of the defendant or his family.