STATE OF CONNECTICUT *v.* EDDIE LEWIS
(AC 23502)

Lavery, C. J., and Bishop and West, Js.

Argued March 22—officially released June 22, 2004

*David B. Rozwaski*, special public defender, for the appellant (defendant).

*Elizabeth M. Moseley*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Michael A. Gailor*, assistant state's attorney, for the appellee (state).

*Opinion*

WEST, J. The defendant, Eddie Lewis, appeals from the judgment of conviction, rendered after a trial to the court, of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4) and threatening in the second degree in violation of General Statutes § 53a-62. On appeal, he claims that the evidence was insufficient to sustain his conviction. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. On January 25, 2001, the defendant entered a Carvel's store in West Hartford wearing a black leather jacket, a mask and a black hood pulled up over his head. The supervisor on duty immediately recognized him as the same individual who had applied for a job in the store two days prior to the robbery. She later shared that observation with the police. According to

the supervisor, the individual who had applied for a job in the store had used the name "Edward Preston" on his application form.[1] Upon recognizing the defendant as "Edward Preston," the supervisor addressed the defendant by the name "Edward," to which he responded, "yo." The defendant then told the supervisor that he was going to rob the store, but added that he hated to do it because he believed her to be "a nice person." The defendant then approached the supervisor, showed her the butt of a gun, threatened to use the firearm[2] and demanded that she lead him to the store's safe. He ordered the other employee in the store to follow them to the safe, pulling her by the shirt. That employee testified that the defendant held the gun in his hand. The defendant took money from the store's safe and cash register and, on exiting the store, advised the two women to "call the police." After the defendant exited the store, the supervisor attempted to catch him, but failed to do so.

The supervisor later recognized the defendant's photograph in the March 3, 2001 edition of the Hartford Courant as the man who had robbed the store on January 25, 2001. She brought the newspaper to work and showed the photograph to the other employee, who had worked on the night of the incident. They both agreed that the photograph was that of the man who had robbed the store. The supervisor contacted the police and shared her discovery with them.

At trial, the defendant testified that he was an acquaintance of the supervisor's husband and that the two had met sometime in 2000 to perform a drug trans-

---

[1] The defendant's full name is Edward Preston Lewis.

[2] At trial, the supervisor described her exchange with the defendant as follows: "[H]e said something about you don't want to have to die for somebody else's money or something like that. And then he said, take me to the safe. So, I was like, you bet, let's go, and I took him back there to the safe."

action. The defendant also testified that in the course of his relationship with the supervisor's husband, he visited the supervisor's home and had met her prior to the incident on January 25, 2001. According to the defendant, the supervisor's husband owed him money and suggested that the defendant go to the Carvel's when his wife was working and take money from the store in settlement of the debt owed to him. The defendant further testified that he and the supervisor's husband originally drove to the store on January 24, 2001, to execute the plan. According to the defendant, he left the supervisor's husband in the car and entered the store alone, but on observing that the store's manager was present, exchanged some words with the supervisor and left. Contrary to the testimony of the supervisor, the defendant maintained that he never wrote any personal information with respect to a job application.

The defendant testified that he had spent the afternoon of January 25, 2001, at the supervisor's house with her husband to discuss another attempt at taking the store's money. He further testified that he never intended to rob or to threaten anyone: "My mindset was that all I was doing was just going to walk in the store and just walk back to where [the supervisor was]. She was there where she gave me the money, and I walked out. My mindset wasn't going into the establishment and threaten by force or rob the establishment." According to the defendant, the supervisor's husband told the defendant that the supervisor had been made aware of the plan on the evening of January 25, 2001, before the event was to occur. The court found the defendant guilty of both offenses and sentenced him to fourteen years of incarceration followed by six years of special parole. This appeal followed.

On appeal, the defendant claims that the evidence was insufficient to sustain his conviction of robbery in the first degree and threatening in the second degree.

Specifically, he argues that because this was an "inside job," he walked into the store without having to display or to threaten the use of a gun and without the intent necessary to establish the robbery offense. Moreover, he argues that there was insufficient evidence to prove that he threatened anyone in the course of the incident, as defined by § 53a-62. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged [offense], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . [I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference.
. . .

"Intent may be, and usually is, inferred from the defendant's verbal or physical conduct. . . . Intent may also be inferred from the surrounding circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Moore*, 82 Conn. App. 267, 270–71, 843 A.2d 652, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004). "If there is conflicting evidence . . . the fact finder is free to determine which version of the event

in question it finds most credible. . . . The determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence. . . . Otherwise, [t]his court would then, by way of fact-finding, be required to adjudicate the validity and the reliability of that evidence. At this stage of the proceedings, we are incapable of making those necessary determinations. . . . Thus . . . the testimony was for the trial court to assess and we have no appropriate role at this level in determining which of the various witnesses to credit." (Citation omitted; internal quotation marks omitted.) *State* v. *Griffin*, 78 Conn. App. 646, 651, 828 A.2d 651 (2003).

Section 53a-134 (a) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." General Statutes § 53a-133 defines robbery as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." Larceny is defined in relevant part by General Statutes § 53a-119 as follows: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

Section 53a-62 (a) provides: "A person is guilty of threatening in the second degree when: (1) By physical threat, such person intentionally places or attempts to place another person in fear of imminent serious physical injury, (2) such person threatens to commit any crime of violence with the intent to terrorize another person, or (3) such person threatens to commit such crime of violence in reckless disregard of the risk of causing such terror."

Sufficient evidence was adduced at trial, as we have set out, on which the court reasonably could have concluded that the state had proven every element of the charged offenses beyond a reasonable doubt. There was testimony that the defendant entered the store on January 25, 2001, armed with a gun, wearing a mask and a black hooded sweatshirt pulled up over his head. He informed the supervisor that he was robbing the store. Both employees at the store saw the defendant's gun. According to the supervisor, the defendant showed her the firearm and warned her that "you don't want to have to die for somebody else's money . . . ." He demanded that the supervisor lead him to the store's safe. After being subjected to the defendant's threat and display of a gun, the two employees complied with his demands. The defendant pulled the second employee by the shirt as all three walked to the back of the store. He then took money from the store's safe and cash register and promptly left.

With respect to the defendant's claim of an "inside job," the court found the following: "There is . . . no credible evidence that [the supervisor] was involved. Additionally, there was no credible evidence that the defendant had reason to believe that she was involved or had foreknowledge of the intended larceny and robbery." There was ample evidence in the record for the court reasonably to conclude that the supervisor was an innocent victim. The court was free to determine

which version of events to be most credible. Moreover, the court specifically found that the supervisor and the employee, a high school student, were separate victims of the defendant's crimes.

After having construed the evidence in the light most favorable to sustaining the verdict, we determine that on those facts and the inferences reasonably drawn from them, the court reasonably could have concluded that the cumulative force of the evidence established the defendant's guilt of both offenses beyond a reasonable doubt. Accordingly, we uphold the defendant's conviction of robbery in the first degree and threatening in the second degree.

The judgment is affirmed.

In this opinion the other judges concurred.