STATE OF CONNECTICUT *v.* LIAM MCKIERNAN
(AC 22839)

Schaller, Flynn and McDonald, Js.

Argued November 20, 2003—officially released July 20, 2004

*Richard W. Callahan*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John M. Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Liam McKiernan, appeals from the judgment of the trial court, rendered after a jury trial, convicting him of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (2).[1] On appeal, the defendant claims that (1) the court's jury instructions denied him a fair trial and a trial by jury, (2) the court improperly failed to conduct an inquiry, sua sponte, into his competency, (3) the court improperly refused to direct judgment on the

---

[1] The defendant was acquitted of burglary in the third degree in violation of General Statutes § 53a-103 (a), sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A).

charges of sexual assault in the first degree and sexual assault in the third degree, and (4) the court improperly refused to disclose the victim's psychiatric records. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant had met the victim[2] approximately one to two years prior to May, 1999. On May 22, 1999, the victim and two of her friends went to a bar in New Haven. Upon leaving the bar at 2 a.m., the victim and her two friends went to the victim's house in Hamden. While at her house, the victim, fully clothed, fell asleep on the kitchen counter, after taking prescribed medication. Her two friends then carried the victim to a couch in the living room. At approximately 6 a.m. on May 23, 1999, the victim awoke on the couch, partially undressed, and found the defendant, who had entered the house while the victim was asleep, performing oral sex on her. The victim screamed and demanded that the defendant stop. When the defendant did so, the victim ran upstairs into her bedroom to awaken her two friends. The defendant subsequently was arrested and, following a jury trial, convicted of sexual assault in the fourth degree. This appeal followed.

I

The defendant first claims that the court's jury instructions denied him his due process rights to a fair trial and a trial by jury. He claims that his due process rights were denied because the court's charge to the jury "negated the jury's consideration of a disputed underlying fact and misled the jury to find for the state on a disputed ultimate fact." We disagree.

The following facts are relevant to our resolution of the defendant's claim. The defendant was charged with

---

[2] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

sexual assault in the first degree, sexual assault in the third degree and sexual assault in the fourth degree. In its charge to the jury on the count of sexual assault in the first degree, the court stated in relevant part: "The defendant's conduct while [the victim] was asleep cannot be considered by you as the use of force. Now, you have heard [the victim's] testimony as to what she claims occurred between her and the defendant when she awoke on the morning of May 23, 1999. Therefore, in order for the defendant to be found guilty of sexual assault in the first degree . . . the state must prove beyond a reasonable doubt that there was some interval of time when [the victim] was awake and that the defendant was performing oral sex upon her through the use of force, that interval of time must be something more than trivial or instantaneous. In other words, if you find that the defendant stopped performing oral sex on [the victim] immediately or virtually immediately upon her awakening, then he cannot be found guilty of sexual assault in the first degree . . . ."

In its charge to the jury on the count of sexual assault in the third degree, the court stated in relevant part: "Again, as I have instructed you as to the [count of sexual assault in the first degree], any conduct on the part of the defendant which took place while [the victim] was asleep cannot be considered as involving the use of force." In its charge to the jury on the count of sexual assault in the fourth degree, the court stated in relevant part: "As sexual assault in the fourth degree does not require proof of the use of force, you may consider what you find to be the defendant's conduct to have been while [the victim] was asleep in deciding whether sexual contact took place without her consent."

The defendant claims that the court's instructions took from the jury's consideration whether the victim was asleep or awake when he removed her clothing

and began performing oral sex on her. The defendant did not object to the court's charge at trial and now asks us to review his claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989),[3] or the plain error doctrine. Practice Book § 60-5.[4]

We will review the defendant's claim under *Golding* because the record is adequate to do so, and the defendant has alleged a claim of constitutional magnitude by asserting that the court's instructions deprived him of his due process right to a fair trial. We conclude, however, that the defendant was not deprived of a fair trial and, therefore, that his claim fails under the third prong of *Golding*.

In considering the defendant's claim, "we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions]

---

[3] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[4] Practice Book § 60-5 provides in relevant part: "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 509–10, 828 A.2d 1248 (2003).

The defendant argues that the instruction was improper because the court "in effect, told the jury that they should decide [the issue] in accordance with [a party's] claims." *Ladd* v. *Burdge*, 132 Conn. 296, 299, 43 A.2d 752 (1945).

It was undisputed at the trial that the victim was asleep during the early morning hours of May 23, 1999. Both the defendant and the victim testified that she was asleep when the defendant entered her house and found her on the couch. The factual dispute involves when the victim was awakened. The victim testified that she was awakened while the defendant was sexually assaulting her. The defendant testified that the victim awoke when he laid down next to her on the couch and that the sexual contact thereafter was consensual.

The defendant was charged with sexual assault in the first, third and fourth degrees. To convict a defendant of either sexual assault in the first or third degree, the state must prove beyond a reasonable doubt that the sexual contact was compelled by the use of force. The actions of the defendant while the victim was asleep could not be said to have been accomplished by the use of force. See *State* v. *Hufford*, 205 Conn. 386, 393, 533 A.2d 866 (1987). Accordingly, the court properly instructed the jury as to the charges of sexual assault in the first and third degree that the actions of the defendant while the victim "was asleep cannot be considered by you as the use of force. . . ."

The state, however, was not required to prove that the defendant used force in compelling the victim to submit to the sexual contact in order to convict him

of sexual assault in the fourth degree. The state was required to prove that there was no consent to the sexual contact. The court, therefore, properly instructed the jury, as to that charge, that it could consider the defendant's actions, if any, while the victim was asleep. The instructions properly directed the jury to consider the defendant's actions when the victim was awake in considering the counts of sexual assault in the first degree and third degree, and when the victim was awake or asleep in considering the count of sexual assault in the fourth degree. We conclude that the instructions never required the jury to find that the victim was asleep during the sexual contact and never foreclosed from the jury's consideration the issue of consent.

Accordingly, we conclude that the defendant's claim fails under the third prong of *Golding*.

The defendant also seeks plain error review of his claim. "It is . . . well established that plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . A defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Beverly*, 72 Conn. App. 91, 103, 805 A.2d 95, cert. denied, 262 Conn. 910, 810 A.2d 275 (2002). As we previously concluded, the court's instructions were proper and did not mislead the jury. Accordingly, plain error review is not warranted in this case.

II

The defendant next claims that the court improperly failed to conduct an inquiry, sua sponte, into his competence. We disagree.

The following facts are relevant to our resolution of the defendant's claim. On the morning of December 3, 2001, the defendant took the witness stand to testify. At the lunch hour, the court suspended the proceedings because it had been informed that the defendant's sister believed that the defendant was having a mental breakdown and she wanted to take him to a hospital for evaluation. The defendant indicated that he wanted the proceedings to continue. The defendant's sister then stated that she had observed the defendant's behavior decline in the previous several days and that she believed that he was in need of a psychological evaluation. The court then ordered that the defendant submit to the evaluation recommended by his sister and continued the case until the following day.

When court reconvened on December 4, 2001, the defendant informed the court that he had been examined at Yale-New Haven Hospital the previous day and subsequently released. Thereafter, the trial was recessed until the following day. On December 5, 2001, the defendant's attorney informed the court that the defendant had been admitted to the psychiatric unit at the Hospital of Saint Raphael the previous night, and counsel asked for a continuance until the defendant was released. The court then recessed the proceedings for the day.

On December 6, 2001, Seth Powsner, a physician at Yale-New Haven Hospital, testified that he was at Yale-New Haven Hospital on December 3, 2001, when the defendant was brought in. Powsner testified that at some point on arriving, the defendant went into a bathroom where he passed out for less than one minute. Powsner testified that when the defendant awoke, the defendant was not making sense. The hospital then took a blood sample from the defendant, which was negative for the presence of narcotics or alcohol. Powsner also testified that later that evening, a nurse, on

hearing the defendant fall, ran to him and saw a T-shirt around his neck. Powsner testified that it was determined that the defendant's behavior was related to the stress of his court case. The defendant was released on the morning of December 4, 2001, after it was determined that he was not a danger to himself or to others, and he was given medications for stress and anxiety. Powsner testified that when he observed the defendant on December 3 and 4, 2001, he was not evaluating him to make a determination as to his legal competency.

On December 7, 2001, the court held a hearing to address a motion filed by the state under Practice Book § 40-19 seeking a psychiatric evaluation of the defendant. The defendant's attorney indicated that he had no objection to a psychiatric evaluation under General Statutes § 54-56d. The court then ordered an examination pursuant to § 54-56d.

On December 12, 2001, Catherine F. Lewis, a psychiatrist with the University of Connecticut Health Center, testified in regard to her examination of the defendant. In conducting the examination, Lewis interviewed the defendant and reviewed the police reports from this case, his psychiatric and medical records, and the motions related to his competency that were filed in court by both the defendant and the state. Lewis stated that during her interview with the defendant, he indicated to her that a mistrial would be a good result of his case and that "a mistrial occurs when you are on medication because by definition, being on antipsychotic meds made you incompetent to stand trial." Lewis also stated that the defendant told her that he was never suicidal and that others had exaggerated his symptoms. It was Lewis' opinion that the defendant was competent to stand trial. She noted, however, that she was of the opinion that the defendant, because of his personality, might "not answer questions in a direct

way or to chastise his attorney, but it is my opinion that that is not the result of a serious mental illness."

On December 14, 2001, the court, with the agreement of the defendant and the state, found that the defendant was competent to continue with the trial. The trial resumed on December 17, 2001, when the defendant again took the witness stand. The defendant's testimony and the trial thereafter proceeded without any further claim of incompetence.

Following the defendant's conviction and sentencing on January 4, 2002, the defendant filed this appeal. On November 8, 2002, the defendant filed a motion for articulation, seeking (1) the legal reasons the court ordered the psychiatric examination pursuant to § 54-56d (d), (2) the facts in support of the court's legal reasons and (3) any observations the court made in the course of the trial. That same day, the defendant also filed a motion for rectification, seeking to have the court rectify the record so that it (1) describes his conduct and actions from the beginning of the trial until when the trial was suspended, (2) provides an expert opinion by Lewis as to whether he was competent when he testified on December 3, 2001, (3) reflects the medications he was taking when the trial resumed on December 17, 2001, and (4) reflects the effect that those medications had on his conduct.

The court held a hearing on those motions on November 27, 2002. The court granted the defendant's request for articulation as to the legal reasons the court ordered the psychiatric examination. The court stated that it ordered the examination pursuant to § 54-56d (d) because the defendant objected to the state's use of Practice Book § 40-19 as a basis for an examination, but the court agreed that there should be a competency examination and that it should be conducted at the court's request to ensure impartiality in the examina-

tion. The court denied the defendant's second and third requests for articulation because it had no memory of what transpired at the trial beyond what appeared in the record. The court also denied the motion for rectification in its entirety because the defendant was not seeking to rectify the record, but was seeking to create a record where none existed.

The defendant now claims that the court failed to inquire into whether he was competent while being tried and while testifying before the jury.

"A defendant who appeals on the basis of a trial court's failure to conduct an evidentiary inquiry into his competence must make a showing that the court had before it specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Substantial evidence is a term of art. Evidence encompasses all information properly before the court, whether it is in the form of testimony or exhibits formally admitted or it is in the form of medical reports or other kinds of reports that have been filed with the court. Evidence is substantial if it raises a reasonable doubt about the defendant's competency . . . . The decision to grant [an evidentiary] hearing [into a defendant's competence] requires the exercise of sound judicial discretion." (Citations omitted; internal quotation marks omitted.) *State* v. *George B.*, 258 Conn. 779, 786–87, 785 A.2d 573 (2001).

"The conviction of an accused person who is not legally competent to stand trial violates the due process of law guaranteed by the state and federal constitutions. . . . This constitutional mandate is codified in . . . § 54-56d (a), which provides that [a] defendant shall not be tried, convicted or sentenced while he is not competent. [A defendant is not competent if he is unable to understand the proceedings against him or to assist in his own defense.] . . . This statutory definition mir-

rors the federal competency standard enunciated in *Dusky* v. *United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960) (per curiam). According to *Dusky*, the test for competency must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him. . . . Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 65 Conn. App. 59, 84–85, 782 A.2d 149, cert. denied, 258 Conn. 923, 782 A.2d 1251 (2001).

We begin our analysis by noting that every criminal defendant is presumed to be competent. General Statutes § 54-56d (b). During the course of the criminal proceedings, however, if it appears that the defendant is not competent, either party or the court may request an examination to determine the defendant's competency. General Statutes § 54-56d (c).

The defendant claims that the court was required to determine if he was competent to continue with the trial after December 3, 2001, when his competency was called into question. We conclude that it did so. Immediately on being alerted to the possibility that the defendant was suffering from a mental breakdown, the court suspended the proceedings and ordered that he be evaluated. The court subsequently ordered that the defendant submit to a psychological examination pursuant to § 54-56d. The examination was performed by Lewis, who testified that the defendant was competent to proceed with the trial. The defendant, through his attorney, did not contest Lewis' determination and stated that there was "no further contest with regard to the compe-

tency issue." We therefore conclude that it is clear that the court took the steps necessary to ensure that the defendant was competent before the trial resumed on December 17, 2001.

It also is the defendant's contention on appeal that the court should have inquired as to whether he "was competent while on the witness stand and testifying [before the proceedings were suspended after the lunch break on December 3, 2001]."

At no time during his trial did the defendant claim that the court should have inquired into his competency before the proceedings were suspended on the afternoon of December 3, 2001. Accordingly, the defendant seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40, and the plain error doctrine. Practice Book § 60-5. We will review the defendant's claim under *Golding* because he has raised a claim of constitutional magnitude. *State* v. *Gonzalez*, 205 Conn. 673, 686, 535 A.2d 345 (1987). We conclude, however, that the defendant has failed to satisfy the third prong of *Golding*.

In support of his claim that there was substantial evidence before the court that required it to inquire into his competency before the proceedings were suspended, the defendant relies on his testimony, the representations of his counsel and sister, evidence that he was hospitalized and involuntarily committed to a psychiatric hospital, the court's implicit finding that he might be incompetent under General Statutes § 52-56d and the testimony of Powsner, who observed him on December 3, 2001. Other than the transcript of the defendant's testimony on December 3, 2001, however, the remainder of the evidence that the defendant relies on came to light only *after* the court suspended the proceedings on December 3, 2001, to determine if he was competent.

We are not confronted with a case in which the court failed altogether to conduct an inquiry. On the contrary, the court immediately halted the proceedings as soon as the issue of the defendant's competency was raised. Before the court was made aware that the defendant's sister had a question about his competency, there was nothing in the record before us to indicate that the court should have conducted an inquiry sooner than it did. Although the defendant's answers on December 3, 2001, were oppositional and confrontational at times, they were not irrational or incoherent. See *State* v. *Wolff*, 237 Conn. 633, 665, 678 A.2d 1369 (1996). Lewis, who reviewed the defendant's testimony before evaluating him, testified at the competency hearing that the defendant's answers, while oppositional, were not indicative of psychosis. Defense counsel never requested a competency examination prior to December 3, 2001, and there is nothing in the record that discloses that the defendant had a history of psychiatric problems. *State* v. *George B.*, supra, 258 Conn. 788. Furthermore, after hearing Lewis' testimony, defense counsel stated that there was "no further contest" with regard to the competency issue.

We conclude that there is no evidence, let alone substantial evidence, that the court should have conducted an inquiry into the defendant's competency prior to the suspension of the proceedings on the afternoon of December 3, 2001. "The trial court was in the best position to assess whether the defendant behaved rationally at that time." *State* v. *DesLaurier*, 230 Conn. 572, 590, 646 A.2d 108 (1994).

We cannot conclude that the court abused its discretion in failing to order, sua sponte, an inquiry as to the defendant's competency prior to when it suspended the proceedings on the afternoon of December 3, 2001. Because we conclude that the court did not abuse its

discretion, plain error review is not warranted in this case.

## III

The defendant next claims that he was deprived of his due process rights when the court failed to direct judgment for him on the charges of sexual assault in the first degree and sexual assault in the third degree because the court unnecessarily exposed him to the risk of a compromised verdict. Specifically, the defendant claims that the court should have directed judgment on those two counts because there was insufficient evidence that he used force to compel the victim to submit to sexual contact, an essential element of the crimes of sexual assault in the first degree and sexual assault in the third degree. We disagree.

"In reviewing the denial of a motion for judgment of acquittal, we employ a two part analysis. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether, from all of the evidence and the reasonable inferences drawn therefrom, the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Green*, 81 Conn. App. 152, 155, 838 A.2d 1030, cert. denied, 268 Conn. 909, 845 A.2d 413 (2004).

The victim testified that she awoke to find the defendant performing oral sex on her. She testified that the defendant's hands were on her inner thighs and the defendant was penetrating her vagina with his mouth and tongue. The pressure exerted by the defendant on the victim's inner thighs left bruising. The victim testified that she screamed and tried to get away from the defendant and that he pushed her down as she tried to escape. The court, therefore, properly denied the defendant's motion for a judgment of acquittal on the

counts of sexual assault in the first degree and sexual assault in the third degree.

Even if we were to conclude that the court improperly submitted to the jury the counts of sexual assault in the first degree and sexual assault in the third degree, the defendant was acquitted of those charges and has failed to offer any evidence to support his claim that members of the jury "compromised their individual determination to reach a unanimous verdict." "That the verdict may have been the result of compromise, or a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters." (Internal quotation marks omitted.) *State* v. *Weiner*, 61 Conn. App. 738, 746, 767 A.2d 1220, cert. denied, 256 Conn. 902, 772 A.2d 600 (2001).

## IV

The defendant last claims that the court abused its discretion by failing to disclose the victim's psychiatric records. We disagree.

The following facts and procedural history are relevant to our resolution of the defendant's claim. On November 26, 2001, the state filed a motion in limine, seeking an order precluding the defendant from eliciting testimony from the victim regarding any psychiatric treatment or counseling she received prior to May 23, 1999.

After conducting an in camera review of the victim's subpoenaed psychiatric records, the court granted the state's motion, finding that there was nothing in the sealed records that reflected on the victim's "truth, veracity [or] ability to recall or relate," nor was there any exculpatory information contained in the records. The court, however, indicated that if, after the victim testified, an inconsistency developed between the victim's testimony and the contents of the records, the

court would disclose those records that reflected the inconsistency. After the victim testified on direct examination, the court disclosed additional portions of the victim's records.

"A conflict exists between a defendant's right to confrontation and the public policy interest of preserving the confidentiality of certain records. . . . To balance those competing interests, a trial court must determine whether the records sufficiently disclose material probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. . . . Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis. . . . At this stage in the proceedings, when the trial court has reviewed the records in camera, access to the records must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . We review the trial court's decision under an abuse of discretion standard. . . . In making such a determination, this court must conduct an in camera inspection of the sealed records." (Citations omitted; internal quotation marks omitted.) *State* v. *Corbin*, 61 Conn. App. 496, 516, 765 A.2d 14 (2001), rev'd in part on other grounds, 260 Conn. 730, 799 A.2d 1056 (2002).

After a careful review of the victim's psychiatric records, we conclude that further disclosure of those records was not required. The information contained in the records that was not disclosed was not exculpatory, nor would it shed light on the ability of the victim to comprehend, know and correctly relate the truth.

The judgment is affirmed.

In this opinion the other judges concurred.