## STATE OF CONNECTICUT *v.* NICKETA WRIGHT
### (AC 28498)

DiPentima, McLachlan and Dupont, Js.

Argued October 14, 2008—officially released May 19, 2009

*Richard S. Cramer*, for the appellant (defendant).

*Raheem L. Mullins*, deputy assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Nicketa Wright, appeals from the judgment of conviction, rendered after a jury trial, of three crimes: sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1); sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1); and risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that the trial court improperly refused to disclose information contained in the victim's Juvenile Court file after its in camera inspection of the file and, therefore, denied him his right to confront and to cross-examine witnesses under the sixth amendment to the United States constitution[2] and his due process right to obtain exculpatory evidence under the fourteenth amendment to the United States constitution.[3] The defendant requests that this court review the victim's Juvenile Court file to determine whether the trial court properly concluded that it did not contain exculpatory information and, if we disagree with the court's conclusion, that we remand the case for a new trial and issue an order releasing the file to him. We affirm the judgment of the trial court.

---

[1] The defendant was sentenced to a total effective term of thirteen years of imprisonment followed by seven years of special parole.

[2] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[3] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law . . . ."

The jury reasonably could have found the following facts. On September 19, 2005, the victim, who was fourteen years old, was living with her mother on the second floor of a two-family house in New Britain. That morning, after her mother left for work, the victim missed her bus to school and subsequently decided to stay home. She proceeded to call a man named Lee, whom she had met through a telephone chat line, and invited him to her house. The victim was under the impression that Lee was eighteen years old and lived in Hartford. She had never seen him but had spoken to him approximately ten times over the telephone.

Shortly thereafter, Lee arrived at her house with two other males—the defendant, who identified himself as Duane, and another male, who identified himself as Ryan. The four watched a movie together, during which the victim and Lee went into her bedroom. Lee kissed the victim on her neck, biting her in the process, and touched her buttocks. He tried to convince her to have further sexual contact with him, but the victim refused, telling him to let her go, which he did. The two rejoined the defendant and Ryan, who were still watching the movie in the living room. The defendant then told the victim that he wanted to talk to her, and they both went into her bedroom. Once inside her bedroom, the defendant pushed the victim onto her bed and took off her pants and underwear. He then put a condom on and proceeded to have sexual intercourse with the victim, despite her asking him to stop. Approximately three minutes later, the defendant put his clothes back on, and he and the victim returned to the living room.

Lee then took the victim back into her bedroom and attempted to have sexual contact with her for a second time by opening her legs with his hands. The victim rebuffed Lee's advances, which prompted the three men to leave the victim's house. Within five minutes of their departure, the victim left her home and went across

the street to her neighbor's house. The victim told her neighbor that she had been raped. The neighbor called the victim's mother, who immediately left work and took the victim to New Britain General Hospital. At the hospital, Ann Alexander, an emergency room staff nurse, examined the victim, using a sexual assault kit in the course of the examination. She observed bite marks on the left and right side of the victim's neck. She was unable to determine from the examination whether the victim had been sexually assaulted.[4]

Upon returning home from the hospital, the victim spoke with Marcin Ratajczak, an officer with the New Britain police department. She told Ratajczak how she came to know Lee and related the sexual assault by the defendant. She described the defendant as a black male with a Jamaican accent, six feet tall and weighing 170 pounds. She described Lee as wearing a blue MECCA[5] shirt and provided Ratajczak with Lee's telephone number. Ratajczak performed a reverse listing inquiry for the telephone number, which produced the address of 203 Sargeant Street, Hartford.

Ratajczak went to the residence, where he located a man who identified himself as Lloyd Aldridge, Sr. Aldridge told Ratajczak that Lee was his son and that Lee's real name was Lloyd Aldridge, Jr. Lee subsequently came out of the house. Ratajczak immediately noticed that Lee's clothing matched the description given by the victim, as he was wearing a blue MECCA shirt. Ratajczak then arrested Lee but was unable at that time to locate the defendant.

Two to three days after the alleged sexual assault of the victim and the arrest of Lee, Michael Steele, a detective with the New Britain police department, was

---

[4] Alexander testified that this is common in cases in which the victim is an adolescent and the perpetrator used a condom.

[5] MECCA is a brand of clothing.

assigned the task of finding the defendant. On October 11, 2005, he discovered that the defendant's real name was Nicketa Wright. A department of motor vehicles record check revealed that the defendant lived at 205 Sargeant Street in Hartford, which was located in the same multifamily house in which Lee lived. Steele then compiled a photographic array that included the defendant's photograph and asked the victim to come to the police station to view it. The victim immediately, and with certainty, identified the defendant as the man who had sexually assaulted her.

Subsequently, on December 16, 2005, Matthew Kelly, an officer with the New Britain police department, arrested the defendant in connection with the sexual assault of the victim. During the booking process, Kelly learned that the defendant was twenty-four years of age,[6] six feet, one inch tall, weighed 170 pounds and spoke with a Jamaican accent.

On the first day of the evidentiary portion of the defendant's trial, the court, *D'Addabbo, J.*, informed defense counsel that the state had issued a subpoena for the victim's Juvenile Court file so that the court could review it in camera to determine whether it contained any exculpatory information.[7] Judge D'Addabbo further stated to defense counsel that the Juvenile Court, *Quinn, J.*, had held a hearing earlier that morning on the victim's motion to quash the state's subpoena[8] and, at the conclusion of the hearing, had issued an order for the release of the file to the trial court for an

[6] The defendant's birth date is September 30, 1981, and, therefore, on the day of the assault, he was twenty-three years of age.

[7] Pursuant to General Statutes § 46b-124 (b), all records of cases of juvenile matters are "confidential and for the use of the court in juvenile matters, and open to inspection or disclosure to any third party . . . only upon order of the Superior Court . . . ."

[8] The record reveals that defense counsel was not present at the hearing before Judge Quinn. The victim was represented by a guardian ad litem at the hearing.

in camera review, absent all mental health screening and assessment information.[9] The state then represented to Judge D'Addabbo that the victim and her mother, after consultation with an attorney, had no objection to the court performing an in camera review of the victim's confidential Juvenile Court file.

After a short recess, Judge D'Addabbo announced that he had reviewed the victim's Juvenile Court file, as redacted, and found that it contained no exculpatory information. Judge D'Addabbo explained that he had reviewed similar files in the past and that he looked at the file with an eye toward "anything that could affect the cross-examination needs of the defense attorney, including the ability [of a witness] to perceive, to recollect, to testify, tell the truth, veracity." Judge D'Addabbo, therefore, did not disclose the contents of the file to the parties and had the file sealed and marked for appellate review, to the extent that there was such appellate review. Judge D'Addabbo next asked the parties if they wanted to say anything. Defense counsel replied: "Nothing to add, Your Honor." Judge D'Addabbo further asked defense counsel: "All right. Any requests that you have at this point?" Defense counsel replied: "No, Your Honor." The court then swore in the jury and commenced the evidentiary portion of the trial.

After the victim and two other witnesses had testified, the court and the parties met in chambers to discuss

[9] The Juvenile Court redacted the mental health information and requested that the office of probation services place a note in the file indicating generically what had been removed. General Statutes § 46b-124 (j) provides in relevant part: "[A]ny information concerning a child that is obtained during any mental health screening or assessment of such child . . . shall be used solely for planning and treatment purposes and shall otherwise be confidential and retained in the files of the entity providing such services or performing such screening, assessment or evaluation. . . . Such information shall not be subject to subpoena or other court process for use in any other proceeding or for any other purpose." Presumably, the Juvenile Court excluded all mental health assessment information in compliance with this statute.

the victim's status as a juvenile in a juvenile probation matter. The state represented to the court that it had advised defense counsel during jury selection that the victim was on probation and had informed defense counsel of the general nature of the probation. Defense counsel agreed that the substance of the information was given to him. The court then stated: "And so you're aware of it, then. You made some tactical decisions during the cross-examination concerning that information." Defense counsel replied: "That's correct, yes."

I

The defendant claims that the court denied him his sixth amendment right to confrontation and fourteenth amendment right to exculpatory evidence when it refused to disclose the information contained in the victim's Juvenile Court file after the court's in camera inspection. A close review of the defendant's brief and oral argument to this court, however, reveals that he also claims that the Juvenile Court improperly redacted the victim's mental health screening and assessment information from the victim's Juvenile Court file, thereby excluding it from the trial court's in camera review.[10] We will first dispose of this second claim.

The state argues that this claim is "wholly unreviewable" because the defendant did not object to Judge Quinn's order removing the mental health information and did not request that Judge D'Addabbo review that information or that it be made part of the record for appellate review. We agree. Although the record reveals that defense counsel was not present at the hearing in front of Judge Quinn, Judge D'Addabbo made counsel aware, on the record, that the hearing had taken place and that at the hearing, Judge Quinn had issued an order that included the redaction of any information regarding the victim's mental health. The defendant,

---

[10] See footnote 9.

therefore, was put on notice of the Juvenile Court's order at that point in time but failed to object to it and appeal from it. The defendant now attempts to raise a claim relating to the Juvenile Court's order in his appeal from the trial court's judgment. The Juvenile Court's order to exclude the victim's mental health records from her juvenile file, however, is wholly unrelated to any action of the trial court. Thus, we will not consider the merits of the defendant's claim that the victim's mental health record was improperly excluded from the victim's Juvenile Court file.[11]

With regard to the defendant's primary claim, namely, that the court violated his constitutional rights when it refused to disclose the victim's Juvenile Court file as redacted, the state, in its brief, argues that this claim is unreviewable because it was not preserved at trial and the defendant did not request this court to review his unpreserved claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[12] The state further argues that even if this court finds the defendant's claim to be reviewable, the trial court properly

---

[11] We note that even if we attempted to reach the merits of the defendant's claim, we would be unable to do so as the record does not contain an unredacted version of the victim's Juvenile Court file. It appears that General Statutes § 46b-124 (j) would have prevented the Juvenile Court from releasing the victim's mental health information to the trial court or this court, and that the Juvenile Court was in compliance within the statutory requirements when it prevented the trial court's review of the information by redaction. See footnote 9. Because we will not review the propriety of the Juvenile Court's order absent an appeal from it, we will not discuss a possible conflict between this statute and the defendant's right to exculpatory information and confrontation. We note that this statute has been amended by Public Acts 2008, No. 08-86, § 4, effective October 1, 2008.

[12] The defendant did not cite *Golding* in his brief. The state, in its brief, referenced *Golding* to claim that the defendant was not entitled to review because he did not specifically request review by citing *Golding*, nor did he specifically address its four prongs in his brief. At oral argument, both the defendant and the state addressed whether the lack of a specific request for review under *Golding* in the defendant's brief precluded our review.

concluded that the file contained no exculpatory information.[13] We agree with the state that the defendant's claim is unpreserved due to his failure to object to the trial court's ruling. We conclude, however, that the defendant's claim is reviewable pursuant to *Golding*, despite his failure to specifically invoke *Golding* in his request for review by this court.

As a general rule, appellate courts do not review claims not raised at the trial level. In *State* v. *Evans*, 165 Conn. 61, 69, 327 A.2d 576 (1973), however, our Supreme Court established review for unpreserved claims that constituted " 'exceptional circumstances' . . . ." The court recognized "two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court. The first is . . . where a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise where the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a fair trial." (Citation omitted.) Id., 70.

The cases decided after *Evans*, interpreting and reinterpreting its precepts, were not always consistent with each other and caused our Supreme Court, in *Golding*, to "articulate guidelines designed to facilitate a less burdensome, more uniform application of the present *Evans* standard in future cases involving alleged constitutional violations that are raised for the first time on appeal." *State* v. *Golding*, supra, 213 Conn. 239. Relying on the methodology of *State* v. *Whistnant*, 179 Conn. 576, 427 A.2d 414 (1980), the court held that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions

---

[13] The state concedes that it really has no way of knowing this because it has not viewed the contents of the sealed file.

are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 239–40.

*Golding* is often misconstrued to require the satisfaction of each of these four conditions to obtain review by this court. Instead, the language in *Golding* provides that all four conditions must be met for a defendant to *prevail* on a claim of constitutional error not preserved at trial. This court's ability to *review* a claim, and the defendant's ability to *prevail* on his claim, are two entirely different concepts. Case law is clear that "[t]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002). As the Supreme Court stated in *Golding*, the defendant "bears the responsibility for providing a record that is adequate for review of his claim" and "demonstrating that his claim is indeed a violation of a fundamental constitutional right," thereby satisfying the first and second prongs." *State* v. *Golding*, supra, 213 Conn. 240. Should the defendant do so, "[an appellate court] will [then] review [the claim] and arrive at a conclusion as to whether the alleged constitutional violation clearly exists and . . . clearly deprived the defendant of a fair trial," and decide whether the state was able to demonstrate harmlessness, thereby satisfying the third and fourth prongs.[14] Id., 241. Thus, the court in *Golding*

---

[14] The state itself in this case has entangled an appellate court's ability to review an unpreserved claim with an appellate court's determination, after review, that the defendant should or should not prevail. The state, in its

ultimately held that this court "erred by refusing to review the defendant's claim since she proffered a constitutional claim and the record was clearly adequate to review that claim." Id., 238.

We recognize that in a number of cases, both this court and the Supreme Court have denied review of an unpreserved alleged constitutional claim on the ground that the defendant failed to request review by citing *Golding*. In recent years, cases have refined this concept as the defendant's failure to *affirmatively* request appellate review by citing *Golding*. These cases can be traced to *State* v. *Ramos*, 261 Conn. 156, 171, 801 A.2d 788 (2002).

In *Ramos*, the defendant brought a number of claims in his direct appeal to the Supreme Court. Id., 159. The court determined that two of those claims were unpreserved. Id., 165, 171. As to the first of those claims, the court held that the defendant, having sought review under *Golding* and having satisfied the first two prongs, failed to satisfy the third prong "because he [had] not demonstrated that the alleged constitutional violation exists." Id., 165. As to the second claim, the court determined that it could not review that claim because the defendant had failed to request *Golding* review. Id., 171. The court was not explicit as to the manner in

brief, first argues that the defendant is not entitled to review because he did not request review under *Golding*. The state then immediately argues that the fact that the defendant alleged that his claim is of constitutional magnitude does not satisfy *Golding* because the defendant's failure to address the four prongs of *Golding* renders his claim inadequately briefed and, therefore, abandoned. Again, our case law is clear that to obtain review, a defendant must provide an adequate record and assert a claim "of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40. Accordingly, inadequate briefing actually relates to whether the defendant has established that the alleged constitutional violation clearly existed and clearly deprived him of a fair trial, in satisfaction of the third prong of *Golding*, which concerns whether the defendant can prevail, not whether the defendant can obtain *Golding* review.

which the defendant had failed to request *Golding* review properly. Id. Instead, it stated: "A party is obligated . . . affirmatively to request review under [the *Golding* doctrine]." Id.

*Ramos* cited the following statement in *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997), in support of the claimed necessity for an affirmative request: "[D]efendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding*." As previously noted, under the precise guidelines of *Golding*, a defendant who seeks consideration of his claim, i.e., review, need only provide an adequate record and proffer a claim "of constitutional magnitude alleging the violation of a fundamental right . . . ." *State* v. *Golding*, supra, 213 Conn. 239–40. We do not interpret *Ramos* and its progeny[15] as requiring a specific mention of *Golding* by name, which would effectively add a fifth prong to its test.[16] "The only justification for the requirement that a defendant specifically cite *Golding* in its brief is that an appellate court should be clear on the level of review a defendant seeks because "[i]t is not appropriate to engage in a level of review that is not requested." (Internal quotation marks omitted.) *Ghant* v. *Commissioner of Correction*, 255 Conn. 1, 17, 761 A.2d 740 (2000).

---

[15] See, e.g., *State* v. *Bowman*, 289 Conn. 809, 815, 960 A.2d 1027 (2008); *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 60, 951 A.2d 520 (2008); *State* v. *Reid*, 277 Conn. 764, 781, 894 A.2d 963 (2006); *State* v. *Commins*, 276 Conn. 503, 515, 886 A.2d 824 (2005); *State* v. *Faison*, 112 Conn. App. 373, 381, 962 A.2d 860, cert. denied, 291 Conn. 903, 967 A.2d 507 (2009); *State* v. *DeVivo*, 106 Conn. App. 641, 646, 942 A.2d 1066 (2008).

[16] Although the Supreme Court in *In re Melody L.*, 290 Conn. 131, 962 A.2d 81 (2009), specifically noted that the respondent failed to meet *Golding* in her brief when it declined to review her unpreserved constitutional claim, the court did not state that *Golding* review could be obtained by the specific mention of *Golding*. The court, therefore, left available other means for a party to meet its burden of establishing that he or she is entitled to *Golding* review.

Given the prominence of *Golding*, and its predecessor, *State* v. *Evans*, supra, 165 Conn. 61, in our jurisprudence, however, it is difficult to conclude that even without a specific mention of *Golding*, an appellate court would fail to realize that a request for *Golding* review is being made in a defendant's brief, when a defendant explores the *Golding* methodology by establishing that there is an adequate record for review and proffering and discussing a claim that is of constitutional magnitude.[17]

The rationale of *Evans* and *Golding* is that fundamental constitutional rights are of such importance that appellate courts should review claims of alleged constitutional violations even when a defendant fails to take an exception to the alleged violation at the trial court level. *Evans* and *Golding* are intended to deal with "substance, not labels." *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982). In *Gooch, Evans* was characterized by Justice Parskey as a "trial court bypass," although a narrow one, as opposed to an "appellate Champs-Elysees." Id. A narrow bypass, however, is not necessarily a street with a neon sign on it, emblazoning the words "*Golding* Review." Moreover, after elimination by our Supreme Court in *Golding* of the hurdle of "failure to preserve" constitutional claims at the trial court level, so that appellate review could be obtained for some unpreserved constitutional claims, it is not logical for us to establish another hurdle, namely, the necessity of the mention of the very case that gives the defendant the right to obtain review of the claim he or she failed to preserve at trial.

---

[17] Not only are *Golding* and *Evans* fixtures in appellate decisions, but they have also been discussed in numerous law review articles, treatises and journals. See, e.g., S. Sellers, "*State* v. *Golding*: A Standardless Standard," 65 Conn. B.J. 245 (1991); J. Ranucci, "State v. Evans: The Unexceptional Exception," 61 Conn. B.J. 359 (1987).

To require a ritualistic incantation in a defendant's brief of the four prongs of *Golding*, followed by a citation to the case by name and volume, would do an injustice to the principles of the case. It is our belief that public confidence in judicial proceedings is more likely to be gained, rather than undermined, if we review a claim authorized by Supreme Court and Appellate Court decisions, instead of turning a "deaf pen" to the claim because the name of the case entitling the defendant to such review was omitted in his or her brief. In addition, our holding promotes judicial economy, as it provides a lessened need for future habeas corpus petitions that allege ineffective assistance of appellate counsel for failure to obtain appellate review of an unpreserved constitutional claim because counsel failed to cite *Golding* specifically in a brief.

This court's position is reinforced by the fact that in a number of instances, both this court and our Supreme Court have reviewed an unpreserved alleged constitutional claim despite the defendant's failure to request a *Golding* review. In both *State* v. *Alvarez*, 216 Conn. 301, 315–16, 579 A.2d 515 (1990), and *State* v. *Moye*, 214 Conn. 89, 97–98, 570 A.2d 209 (1990), our Supreme Court *presumed* that the defendant was seeking an *Evans-Golding* review because he asserted a claim of constitutional magnitude that he did not raise at trial, allowing the court to then proceed to analyze the claim under the prongs of *Golding*. This court also, in *State* v. *Rodriguez*, 37 Conn. App. 589, 617–18, 658 A.2d 98, cert. denied, 234 Conn. 916, 661 A.2d 97 (1995), stated: "Presumably, the defendant seeks review under . . . *Golding* . . . although he has not cited that case, which allows review of an unpreserved claim of constitutional error under certain conditions. The claim is reviewable under the first two prongs of *Golding*, but the actual review shows the defendant's claim to be meritless."

Furthermore, our Supreme Court in *Waz*, the case on which *Ramos* relies, addressed the defendant's unpreserved constitutional claim, despite the defendant's failure to make an express reference to the guidelines specified in *Golding*. *State* v. *Waz*, supra, 240 Conn. 371 n.11. In *Ramos* itself, the Supreme Court stated: "In certain instances, dictated by the interests of justice, we may, sua sponte, exercise our inherent supervisory power to review an unpreserved claim that has not been raised appropriately under the *Golding* or plain error doctrines." *State* v. *Ramos*, supra, 261 Conn. 172 n.16; see Practice Book § 60-5 (plain error review); see also *State* v. *Jones*, 281 Conn. 613, 618 n.5, 916 A.2d 17, cert. denied, 552 U.S. 868, 128 S. Ct. 164, 169 L. Ed. 2d 112 (2007). Moreover, in *State* v. *Roy*, 233 Conn. 211, 212, 658 A.2d 566 (1995), a unanimous Supreme Court, in a per curiam decision, held that a defendant need not invoke the guidelines of *Golding* to get review of an unpreserved insufficiency of the evidence claim because "[i]t is an essential of the due process guaranteed by the [f]ourteenth [a]mendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof . . . ." (Internal quotation marks omitted.) Id., 212–13.

In conclusion, although we do not make it mandatory for a defendant to cite *Golding* to obtain review of an unpreserved claim of a constitutional deprivation at trial, we do require that a defendant present a record that is adequare for review and affirmatively "[demonstrate] that his claim is indeed a violation of a fundamental constitutional right."[18] *State* v. *Golding*, supra, 213 Conn. 240. In the present case, the defendant has provided a record adequate for review and has sufficiently demonstrated, by discussion of relevant authority, that his claim that the court improperly refused to disclose

---

[18] "Patently nonconstitutional claims that are unpreserved at trial do not warrant special consideration simply because they bear a constitutional label." *State* v. *Golding*, supra, 213 Conn. 240.

the information contained in the victim's Juvenile Court file implicates his sixth amendment right to confront witnesses and his fourteenth amendment due process right to obtain exculpatory evidence, both of which are of constitutional magnitude. Therefore, he has met the requirements for review as set out in *Golding*, even though he failed to cite the case by name in his brief.

## II

Having concluded that the defendant's unpreserved claims are reviewable, we next determine whether a constitutional violation clearly exists and clearly deprived the defendant of a fair trial, such that he should prevail.[19] The defendant first claims that the court's refusal to grant him access to the victim's Juvenile Court file violated his sixth amendment right to confrontation. He argues that when the state's case rests on the victim's testimony and when the defense amounts to an attack on the victim's credibility, the defendant is entitled to access exculpatory information in the victim's Juvenile Court file for possible use in cross-examination.

"A criminal defendant has a constitutional right to cross-examine the state's witnesses, which may include impeaching or discrediting them by attempting to reveal to the jury the witnesses' biases, prejudices or ulterior motives, or facts bearing on the witnesses' reliability, credibility, or sense of perception." (Internal quotation marks omitted.) *State* v. *Webb*, 75 Conn. App. 447, 456,

[19] We do not agree with the state that the defendant's claims are briefed inadequately and, therefore, abandoned. See footnote 14. As is always true in all cases, issues can be reviewed only if adequately briefed. The defendant, however, set forth a developed argument as to the existence of the constitutional violations and the manner in which they deprived him of a fair trial. The mere omission of a reference to *Golding* does not render his claims inadequately briefed. Furthermore, as specifically stated in *Golding*, it is the state's burden to demonstrate harmlessness; *State* v. *Golding*, supra, 213 Conn. 241; and therefore, the defendant's failure to incorporate a harmlessness analysis also does not render his brief inadequate for review of his claims.

817 A.2d 122, cert. denied, 263 Conn. 919, 822 A.2d 244 (2003). Thus, "[a] conflict exists between a defendant's right to confrontation and the public policy interest of preserving the confidentiality of certain records." (Internal quotation marks omitted.) *State* v. *McKiernan*, 84 Conn. App. 31, 47, 851 A.2d 1198, cert. denied, 271 Conn. 915, 859 A.2d 573 (2004). "[I]n some instances, otherwise privileged records . . . must give way to a criminal defendant's constitutional right to reveal to the jury facts about a witness' mental condition that may reasonably affect that witness' credibility. . . . The defendant's right of cross-examination does not, however, allow him to discredit and impeach in whatever way, and to whatever extent, the defendant might wish. . . . [T]he right to cross-examine witnesses does not include the power to *require* the pretrial disclosure of any and all information that *might* be useful in contradicting unfavorable testimony. . . .

"Our Supreme Court has set forth a specific procedure to accommodate the tension between the defendant's constitutional right of cross-examination and the privacy interest of a witness in her confidential records. If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that there is a reasonable ground to believe that the failure to produce the records would likely impair his right to impeach the witness. . . ."[20] If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in

---

[20] Because the state subpoenaed the victim's Juvenile Court file, the defendant in the present case did not have to make such a showing.

camera inspection entitles the defendant to have the witness' testimony stricken. . . .

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review. . . .

"Our standard of review of a challenge to a court's refusal to disclose privileged records is whether there was an abuse of discretion. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion . . . means that the ruling appears to have been made on untenable grounds. . . . In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action. . . . Access to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records. . . . On appeal, this court has the responsibility of conducting its own in camera inspection of the sealed records to determine if the trial court abused its discretion in refusing to release those records to the defendant." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Webb*, supra, 75 Conn. App. 456–58.

We have carefully examined the victim's Juvenile Court file and conclude that the trial court did not abuse its discretion when it refused to disclose the file to the defendant on the basis of its determination that the file did not contain evidence that was probative of the victim's testimonial capacity or relevant to her impeachment. Therefore, we conclude that the defendant failed to satisfy the third prong of *Golding* because he has not demonstrated that the alleged constitutional violation exists. See *State* v. *Golding*, supra, 213 Conn. 239–40.

## III

The defendant next claims that the denial of access to the victim's Juvenile Court file violated his due process right to exculpatory material under *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). The defendant argues that "there is a slight suggestion [from the victim's juvenile probationary status] that meaningful and exculpatory information was available in those sealed records."[21]

*Brady* v. *Maryland*, supra, 373 U.S. 83, involves the duty of the prosecution to disclose exculpatory evidence to the defendant. Typically, "[a] due process violation occurs under *Brady* only if the prosecution withholds material evidence favorable to a defendant." *State* v. *Harris*, 227 Conn. 751, 762, 631 A.2d 309 (1993). *United States* v. *Agurs*, 427 U.S. 97, 106, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), however, specifically approves the procedure of the court making an in camera determination. Therefore, although the heart of the holding in the *Brady* case is the prosecution's suppression of evidence; *State* v. *Bember*, 183 Conn. 394, 404, 439 A.2d

---

[21] General Statutes § 46b-120 indicates that a juvenile may be placed on probation for reasons other than violations of federal or state law. The reasons include, but are not limited to, violations of municipal or local ordinances, running away from home, unexcused absences from school and defiance of school rules and regulations.

387 (1981); and although here the state had no access to the records and thus could not have suppressed them, we must assume that "if the trial court discovers, in the course of an in camera inspection, evidence which is exculpatory . . . in the *Brady* and *Agurs* senses, it would have a similar duty of disclosure to the defense." (Internal quotation marks omitted.) *State* v. *Storlazzi*, 191 Conn. 453, 461, 464 A.2d 829 (1983). Consequently, "[a]fter performing an in camera inspection, the trial court is required to release only information that is material and favorable to the defense." *State* v. *Leduc*, 40 Conn. App. 233, 249, 670 A.2d 1309 (1996), on appeal after remand, 44 Conn. App. 744, 690 A.2d 1390, cert. denied, 241 Conn. 909, 695 A.2d 541 (1997).

"Favorable evidence is that evidence which . . . might have led the jury to entertain a reasonable doubt about . . . guilt . . . and this doubt must be one that did not otherwise exist. . . . On the other hand, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *United States* v. *Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Leduc*, supra, 40 Conn. App. 249–50. "If the information discovered during an in camera inspection probably would have changed the outcome of [a] trial the defendant must be given a new trial . . . ." (Internal quotation marks omitted.) Id., 250.

"It is true that [w]hen a conviction depends entirely upon the testimony of certain witnesses . . . information affecting their credibility is material in the constitutional sense since if they are not believed a reasonable doubt of guilt would be created." (Internal quotation marks omitted.) *State* v. *Storlazzi*, supra, 191 Conn. 462.

Our review of the victim's Juvenile Court file, viewed in conjunction with the entire trial transcript, fails to convince us that anything in the file left undisclosed by the trial court would have affected the victim's credibility or would have created a reasonable doubt of the defendant's guilt. The trial court, therefore, did not fail to disclose any evidence so material as to undermine confidence in the outcome of the trial. See *State* v. *Harris*, supra, 227 Conn. 763. Accordingly, we conclude that the court did not abuse its discretion and that the defendant has failed to satisfy the third prong of *Golding* because he has not demonstrated that the alleged constitutional violation exists. See *State* v. *Golding*, supra, 213 Conn. 239–40.

The judgment is affirmed.

In this opinion McLACHLAN, J., concurred.

DiPENTIMA, J., concurring. I agree with my colleagues that the conviction of the defendant, Nicketa Wright, should be affirmed. I respectfully disagree, however, that the defendant adequately has briefed the threshold question of whether this court should review his claims pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Accordingly, I concur in the judgment of the majority.

Our Supreme Court recently stated: "It is well established . . . that parties *affirmatively* seek to prevail under *Golding*, and bear the burden of establishing that they are entitled to appellate review of their unpreserved constitutional claims." (Emphasis added.) *In re Melody L.*, 290 Conn. 131, 154, 962 A.2d 81 (2009). Moreover, this court repeatedly has observed that the "failure to address the four prongs of *Golding* amounts to an inadequate briefing of the issue . . . ." (Internal quotation marks.) *State* v. *Bourguignon*, 82 Conn. App. 798, 801, 847 A.2d 1031 (2004); see also *State* v. *DeVivo*, 106

Conn. App. 641, 647, 942 A.2d 1066 (2008); *State* v. *David P.*, 70 Conn. App. 462, 474, 800 A.2d 541, cert. denied, 262 Conn. 907, 810 A.2d 275 (2002).

I am persuaded by the majority's reasoning that there is no necessity for a talismanic incantation[1] of the *Golding* citation or the rote recitation of its four prongs. I agree that to demonstrate that appellate review of an unpreserved claim of a constitutional deprivation is warranted, a defendant is required to employ the methodology of *Golding* by providing an adequate record for review and alleging that a constitutional violation occurred at the trial court. To accomplish this, a defendant must present this court with a coherent, logical argument for review with authoritative citations to precedent. I depart from the majority in its conclusion that the defendant has satisfied that latter requirement. The defendant's appellate brief sets forth a claim of a constitutional violation. It fails, however, to address his entitlement to review, much less the adequacy of the record. As a result, I reluctantly depart from the opinion of the majority and conclude that the defendant has failed to brief adequately the issue of whether he is entitled to *Golding* review.

I respectfully concur.

---

[1] "Connecticut courts have refused to attach talismanic significance to the presence or absence of particular words or phrases. See, e.g., *State* v. *Robinson*, 227 Conn. 711, 731, 631 A.2d 288 (1993) (failure to use talismanic words does not indicate failure to make necessary determination); *State* v. *Onofrio*, 179 Conn. 23, 45, 425 A.2d 560 (1979) ([t]here is no talismanic ritual of words that must be spoken by a dying declarant to render statements admissible); *State* v. *Peters*, 89 Conn. App. 141, 146, 872 A.2d 532 (the fact that the court did not use the specific words psychiatric disabilities does not warrant reversal under the plain error doctrine), cert. denied, 274 Conn. 918, 879 A.2d 895 (2005); *State* v. *Peters*, 40 Conn. App. 805, 823, 673 A.2d 1158 (jury charge not improper for failure to recite talismanic words), cert. denied, 237 Conn. 925, 677 A.2d 949 (1996)." (Internal quotation marks omitted.) *State* v. *Edwards*, 100 Conn. App. 565, 578–79 n.6, 918 A.2d 1008, cert. denied, 282 Conn. 928, 929, 926 A.2d 666, 667 (2007).